# OFFICE OF THE FEDERAL PUBLIC DEFENDER
# DISTRICT OF MARYLAND
NORTHERN DIVISION
TOWER II, 9TH FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND 21201-2705
TEL:  (410) 962-3962
FAX:  (410) 962-3976
TOLL FREE: (855) 213-8450

JAMES WYDA

FEDERAL PUBLIC DEFENDER

JESSICA SAWADOGO & SHARI DERROW

ASSISTANT FEDERAL PUBLIC DEFENDERS

April 23, 2026

The Hon. Charles D. Austin
United States Magistrate Judge
District of Maryland
101 West Lombard Street
Baltimore, MD  21201

Re:      *United States v. Tiago Sousa-Martins,* No. CDA-26-45

Dear Judge Austin:

Mr. Sousa-Martins is scheduled to appear before the Court for a combined guilty plea and sentencing hearing on April 27, 2026. We write in advance of that date to advise the Court of how Mr. Sousa-Martins intends to proceed at the hearing and to ask the Court to impose a sentence of time served.[1]

I.      **A sentence of time served (the four months Mr. Sousa-Martins has spent in Marshals' custody) is consistent with the terms of the parties' plea agreement.**

a.   **The parties agree that Mr. Sousa-Martins' sentencing guidelines are 0 to 6 months.**

Pursuant to the plea agreement, Mr. Sousa-Martins intends to plead guilty to Destruction of Government Property, in violation of 18 U.S.C. § 1361. This is a Class A misdemeanor with a statutory maximum penalty of one year of imprisonment. There is a mandatory $25 special assessment, and the parties agree that Mr. Sousa-Martins will be subject to a $1,000 order of restitution. The Government will move to dismiss any open counts at sentencing.

The parties agree that Mr. Sousa-Martins' sentencing guidelines range is 0 to 6 months. Mr. Sousa-Martins has no criminal history points, placing him in a Criminal History Category of I. The Base Offense Level for Destruction of Government Property is 6 under §2B1.1 of the U.S.S.G. The parties also agree that Mr. Sousa-Martins qualifies for a 2-level reduction under the Zero-Point Individual provision at §4C1.1, as well as a 2-level reduction for acceptance of responsibility under §3E1.1(a). The Government believes that a 2-point enhancement is merited under U.S.S.G. §3C1.2.

---

[1] Mr. Sousa-Martins has been held in Marshals' custody since his initial appearance on January 16, 2026 and, before that, was held in immigration custody starting December 24, 2025. His immigration counsel has advised that he will suffer adverse immigration consequences if he spends 180 days or more in custody in connection with a conviction in this case, as he will not be able to show good moral character. 8 U.S.C. § 1101(f)(7).

For the reasons outlined below, the Defense contests the application of this enhancement. Ultimately, however, whether the Court applies the sentencing enhancement does not change the guidelines range, which remains 0 to 6 months in either scenario. A Final Offense Level of 4 (with the sentencing enhancement) or 2 (without the sentencing enhancement), with a Criminal History Category I, results in an advisory guidelines range of 0 to 6 months' incarceration.

A sentence of time-served falls within the advisory guidelines range and, for the reasons outlined below, is sufficient, but not greater than necessary, to meet the purposes of sentencing under 18 U.S.C. § 3553.

> **b. The Court should reject the reckless endangerment enhancement because Mr. Sousa-Martins did not create a substantial risk of death or bodily injury to another person when ICE officers fired at him a minimum of 13 times and he was shot twice.**

The Court should not apply U.S.S.G. §3C1.2 because flight alone is insufficient for the enhancement; Mr. Sousa-Martins was the only individual who was gravely injured when ICE officers shot at him at least 13 times and struck him twice; and not a single individual was present on the pathway through which Mr. Sousa-Martins traveled after being shot. Section 3C1.2 applies when a defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. Vehicular flight alone does not necessarily merit the reckless endangerment enhancement. *See United States v. Burnley*, 988 F.3d 184, 191 (4th Cir. 2021). Indeed, "mere flight—even if it results in armed pursuit—does not justify the enhancement;" "instinctive flight alone will not support the enhancement, nor will the armed agent's pursuit." *United States v. Gould*, 529 F.3d 274, 277 (5th Cir. 2008). "To warrant application of §3C1.2, evidence supporting a substantial risk of death or serious bodily injury to another person must be more than speculative." *United States v. Coffer*, 154 F.4th 965, 968–69 (8th Cir. 2025). The risk of death or serious bodily injury must be substantial. *See United States v. Smith*, 210 F.3d 760, 763 (7th Cir. 2000). The Government bears the burden of establishing a sentencing enhancement by a preponderance of the evidence. *United States v. Shivers*, 56 F.4th 320, 325 (4th Cir. 2022).

The Government's allegations that Mr. Sousa-Martins (1) acted recklessly and (2) created a substantial risk of death or serious bodily injury to another person are without merit. The Government alleges that Mr. Sousa-Martins turned down a residential path after (or during the course of)[2] being shot at no less than 13 times. *See* Ex. A (documenting number of gun casings found on scene). When this incident occurred, there were absolutely no bystanders on the path or seemingly even present outside. There were thus absolutely no individuals who could have been harmed by Mr. Sousa-Martins' vehicle as it turned down the path, and mere speculation about harm to hypothetical individuals is insufficient to apply the enhancement. Of course, Mr. Sousa-Martins was gravely injured when he was shot twice (he was shot once in the thigh and once in the back) and his car

---

[2] All six ICE officers present at the scene on December 24, 2025, declined to be interviewed by FBI on the date of the shooting, citing advice received from their superiors. They were interviewed by an FBI agent and an Anne Arundel County Police officer on December 30th. At least one ICE officer interview reveals that Mr. Sousa-Martins went down the pathway only after being shot.

ultimately crashed into a tree, but injury to a defendant cannot be considered in applying the enhancement. *Shivers*, 56 F.4th at 325. Courts have rejected applying this enhancement when the facts proffered by the Government about non-existent individuals who could have been harmed during flight are purely speculative. *See id.* at 325–26 (declining to apply 3C1.2 enhancement where government presented no evidence about the presence of bystanders); *United States v. Mukes*, 980 F.3d 526, 538 (6th Cir. 2020) (finding the government did not meet its burden of proof to show that others may have been placed in danger); *Coffer*, 154 F.4th at 968–69 (same). This Court should do the same. The facts presented by the Government do not give rise to any risk of death or serious bodily injury—much less a substantial risk—given that there were no bystanders close to the path or even present outside.

**II.     A time-served sentence is sufficient, but not greater than necessary, to comply with the purposes of sentencing.**

There are several reasons why a sentence of time-served, with no term of supervised release, is the appropriate outcome in Mr. Sousa-Martins' case.

First, Mr. Sousa-Martins' history and characteristics weigh in favor of a time-served sentence given the remarkable life he has built since arriving in this country as a 13-year-old boy. Mr. Sousa-Martins first came to the United States at age 13, when he was invited to spend the summer with his father, who had moved to the United States when he was young. While he enjoyed the summer in the United States, he was happy to return to his mother and brother in Portugal. When Mr. Sousa-Martins was invited to join his father for winter break, he assumed it would again be a temporary vacation. This assumption was wrong. Mr. Sousa-Martins' father confiscated his passport and told him he was to stay in the United States. Worse, his father had a drinking problem that made him abusive and volatile, eventually kicking Mr. Sousa-Martins out of his home when Mr. Sousa-Martins was 16.

Forced to fend for himself, Mr. Sousa-Martins showed tremendous resilience. He moved in with a friend. He learned English. He completed high school. He began working, earning a general contractor's license. He fell in love and started a family. He bought a home. Mr. Sousa-Martins built a beautiful life for himself, his partner, and his two children. He sought to create the loving and stable upbringing he lacked as a teenager.

 

Mr. Sousa-Martins' desire to support his family is what led to his arrest over three and a half months ago. On Christmas Eve in 2025, Mr. Sousa-Martins left his home for a contracting job. He stopped at Lowe's, where ICE agents zeroed in on his van and ran his license plate through the Maryland Motor Vehicle Administration's database to determine his legal status. After suspecting him of violating a civil immigration offense, six ICE agents followed him to a residential neighborhood and used their vehicles to "box" him in. Mr. Sousa-Martins was terrified when the armed ICE agents surrounded him, smashed his driver's side window, and demanded his identification. His desire to finish one last job before Christmas permanently altered his family's life. Because of these facts, Mr. Sousa-Martins' history and characteristics merit a time-served sentence.

Second, a time-served sentence is appropriate considering Mr. Sousa-Martins has already spent time in immigration detention and will likely face additional months, if not years, in immigration custody as he pursues immigration relief. Mr. Sousa-Martins' time in custody will be especially punitive given that he is still recovering from grave injuries related to his arrest. Ex. B & Ex. C (wound photos). When Mr. Sousa-Martins was first taken into ICE custody, he had a collapsed lung, three bullet hole wounds (the bullet hole wound in his back and the entry and exit bullet hole wounds in his thigh), and fractures to his rib and spine. Mr. Sousa-Martins is still healing, though he has not received adequate care while detained. These injuries are especially concerning given that as a general contractor, Mr. Sousa-Martins may not be able to work again depending on the long-term effects from the shooting. The fact that Mr. Sousa-Martins will spend additional time in immigration custody, with serious injuries, further weighs in favor of a time-served sentence.

For these reasons, Mr. Sousa-Martins respectfully requests that the Court accept the plea agreement and impose a sentence of time-served.

Respectfully,

/s/
Jessica Sawadogo
Shari Derrow
Assistant Federal Public Defenders

Cc: Robert Goldaris, AUSA